UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANNA RODRIGUEZ, YUDELKA ROBLES, SEYMOUR OBERLANDER, CHARLOTTE FOLEY, CARMEN TORRES, APRIL THOMAS,<br><br>                              Plaintiffs<br><br>v.<br><br>PRESSLER AND PRESSLER, L.L.P., PALISADES COLLECTION, L.L.C., JOANNE BERGMAN, YOEL CRUZ, ELAINE LUCAS,<br><br>                              Defendants | Civil Action No. 06-5103 (BMC/JO)<br><br>**AMENDED COMPLAINT AND JURY DEMAND** |

## PRELIMINARY STATEMENT

1.      This is an action for actual and statutory damages brought by a group of individual consumers for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, which prohibits debt collectors from engaging in abusive, deceptive, or unfair practices.  Plaintiffs contend that Defendants have used and continue to use unlawful, unfair, and deceptive methods to collect old debts allegedly owed at one time to AT&T Wireless, which went out of business in early 2004.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.  Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

3.      Venue in this district is proper under 28 U.S.C. § 1391(b) because Defendants transact business here, and some of the conduct complained of occurred here.

## PARTIES

4.     Plaintiff Anna Rodriguez is a natural person who resides at 141-06 Laburnum Avenue, Flushing, NY 11355.

5.     Plaintiff Yudelka Robles is a natural person who resides at 900 Riverside Drive, Apt. 1C, New York, NY 10032.

6.     Plaintiff Seymour Oberlander is a natural person who resides at 1167 47th Street, Apt. 1, Brooklyn, New York 11219.

7.     Plaintiff Charlotte Foley is a natural person who resides at 65 Reeve Place, Brooklyn, NY 11218.

8.     Plaintiff Carmen Torres is a natural person who resides at 370 47th Street, Apt. 2A, Brooklyn, NY 11220.

9.     Plaintiff April Thomas is a natural person who resides at 724 East 224th Street, Bronx, New York 10466.

10.     Plaintiffs are all "consumers" as defined by 15 U.S.C. § 1692a(3).

11.     Defendant Pressler and Pressler is a limited liability partnership with its principal place of business at 16 Wing Drive, Cedar Knolls, NJ 07927.  Defendant maintains an office in the State of New York at 990 Stewart Avenue, Suite 30, Garden City, NY 11530.  Defendant transacts business in this district.

12.     Defendant Pressler and Pressler is a law firm engaged in the business of collecting debts by filing civil collection lawsuits on behalf of its clients, who are also debt collectors.  Defendant also collects debts from consumers using the mail and the telephone.  Defendant regularly collects consumer debts alleged to be due to another.  Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

13.     Defendant Palisades Collection, LLC (hereinafter, "Palisades"), is a New Jersey limited liability corporation with its principal place of business at 210 Sylvan Avenue, Englewood, NJ 07632.  Defendant's registered agent in the State of New York is C T Corporation System, 111 Eighth Avenue, New York, NY 10011.  Defendant Palisades Collection transacts business in this district.

14.     Defendant Palisades is a purchaser and collector of debts.  Defendant is engaged in the business of collecting debts from consumers using the mail and the telephone.  Defendant regularly collects consumer debts alleged to be due to another. Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

15.     At all times relevant to this action, Defendant Joanne Bergman was and is a natural person employed by Defendant Palisades as Vice President of the Legal Department.

16.     At all times relevant to this action, Defendants Yoel Cruz and Elaine Lucas were and are natural persons employed by Defendant Palisades Collections as Account Specialists.

## FACTUAL ALLEGATIONS

### Allegations pertaining to all Plaintiffs

17.     In or about February 2004, AT&T Wireless Services, Inc., then a major provider of cellular telephone service, merged with Cingular.  As a result of the merger, AT&T Wireless ceased to exist as an independent business entity.

18.     In or about July 2004, AT&T Wireless sold a large batch of consumer receivables to Defendant Palisades Collection.  These receivables consisted of old,

defaulted and charged off debts, some of which dated back as far as 1999, or even earlier. Defendant Palisades bought these receivables for pennies on the dollar.

19.     Upon information and belief, at the time it bought the debts, Defendant Palisades did not acquire the consumers' actual files from AT&T Wireless.  Among the documents that Defendant did not obtain were:  (1) the consumers' original, signed contracts with AT&T Wireless; (2) original billing statements; (3) payment records; (4) proof that the billing statements were actually mailed to the consumers; and (5) notes from AT&T Wireless' computer system that would reflect calls that consumers had made to AT&T Wireless' customer service department.

20.     Upon information and belief, the "documentation" Defendant Palisades Collection received from AT&T Wireless consisted of:

> a.   A computer spreadsheet containing each individual's name, Social Security Number, telephone number(s), address, account open date, last payment date, charge-off date, and alleged amount owed. Defendants refer to this spreadsheet as the "stream of data."
>
> b.   A generic, undated document entitled "AT&T Wireless Welcome Guide" which contains several pages entitled "General Terms and Conditions of Wireless Service."  There is no information about when – if ever – this document was actually provided to consumers.

21.     In addition, upon information and belief, the contract between AT&T Wireless and Defendant Palisades Collection gives Defendant the right to request additional documentation for 20% of the debts it bought.  Upon information and belief, Defendant Palisades Collection is required to pay for that additional documentation.

22.     Upon information and belief, the additional documentation consists of "account summaries" that contain information regarding telephone calls made and received, charges assessed, and payments received on the accounts.

23.     Upon information and belief, these "account summaries" are not true and correct copies of bills or statements that were ever sent to AT&T Wireless subscribers.

24.     Upon information and belief, defendants generally do not requisition more than three months of such account summaries even in cases where the alleged debtor disputes the charges or requests proof of defendants' claims.

25.     Neither the "stream of data" nor the "account summaries" described above would be deemed admissible as evidence in a New York State court.

26.     In or about July 2004, Defendant Palisades Collection began collecting the AT&T Wireless debts from New York City consumers.

27.     Sometime thereafter, Defendant Palisades Collection hired Defendant Pressler and Pressler, a debt collection law firm, to collect the AT&T Wireless debts on its behalf.

28.     Defendant Pressler and Pressler typically sends letters and makes telephone calls to consumers requesting payment of the alleged AT&T Wireless debts.

29.     If those efforts fail, Defendant Pressler and Pressler files debt collection lawsuits against the consumers in the Civil Court of the City of New York.  Defendant Palisades Collection is the Plaintiff in those lawsuits.

30.     Upon information and belief, Defendants have filed and continue to file many hundreds of such cases in the New York City Civil Courts, including the cases filed against plaintiffs herein.

31.     Under New York law, every court filing must contain an attorney's signature.  That signature represents the attorney's certification that "to the best of that person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of the paper or the contentions therein are not frivolous." 22 N.Y.C.R.R. § 130-1.01a(b).  A filing is "frivolous" if it "is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law" or if it "asserts material factual statements that are false."  22 N.Y.C.R.R. § 130-1.01.

32.     Upon information and belief, however, Defendant Pressler and Pressler made no reasonable inquiry into the merits of the case prior to filing lawsuits against plaintiffs herein.

33.     Upon information and belief, Defendant Pressler and Pressler did not exercise independent professional judgment in determining whether the cases against plaintiffs were meritorious.

34.     Upon information and belief, Defendant Pressler and Pressler did not have any meaningful involvement in the decision to pursue claims against the plaintiffs.

35.     Upon information and belief, Defendant Pressler and Pressler attempts to collect all debts placed with it by Defendant Palisades Collection, and it files suit in all cases in which the initial dunning letter and phone calls fail to generate payment.

36.     Upon information and belief, the only information Pressler and Pressler had in its possession at the time it filed the lawsuits against plaintiffs was a copy of the "stream of data."

37.     Because Defendant Pressler and Pressler made no effort to determine whether the allegations in the complaints against plaintiffs were true prior to filing suit, it alleged every fact in every complaint on information and belief.

38.     The complaints served on plaintiffs by Defendant Pressler and Pressler on behalf of Defendant Palisades Collection contained false statements.

39.     Upon information and belief, at the time of filing neither Pressler and Pressler nor Palisades Collection had any evidence of debts owed by plaintiffs beyond the "stream of data" described in paragraph 20 above, which does not constitute admissible evidence under New York law.

40.     The complaints served on plaintiffs were "verified" by attorneys who work for Defendant Pressler and Pressler.  In these verifications, the attorneys swore that they were "in possession of the salient papers in connection with the action herein."

41.     This allegation was misleading, since it suggests to an unsophisticated consumer that Pressler and Pressler attorneys possessed papers sufficient to prove their case in court.  However, the Pressler and Pressler attorneys possessed only the unreliable hearsay documents described above in paragraph 20 that would not be admissible at trial.

42.     Furthermore, upon information and belief, although Defendants had the ability to order additional documentation of Plaintiff's debts if necessary, that additional documentation consists only of the "account summaries" described above in paragraph 22.  These account summaries also would not be admissible at trial.

43.     Defendants have failed to produce any admissible documents in any of plaintiffs' cases, and in fact, have produced nothing beyond the three types of inadmissible documents listed in paragraphs 20-22 above.

44.     In the case of plaintiffs Robles, Torres, and Foley, Defendants sought and obtained default judgments based on perjurious affidavits submitted by Defendants Joanne Bergman, Yoel Cruz, and Elaine Lucas.  In the affidavits, Defendants falsely swore that they had "personal knowledge" that Plaintiffs owed a debt, when in fact Defendants had no personal knowledge and possessed no admissible proof to establish that Plaintiffs owed anything.

45.     Defendants now admit that Plaintiffs Torres and Foley never owed anything at all to AT&T Wireless and/or Defendant Palisades Collection.

46.     Upon information and belief, Defendants' misstatements and misrepresentations made in the course of their attempts to collect debts allegedly owed by Plaintiffs did not result from any good faith error.

47.     Upon information and belief, Defendants do not maintain procedures reasonably adapted to avoid or minimize such errors.

48.     Upon information and belief, Defendants deliberately chose to maintain their current procedures, despite the significant likelihood of error, knowing that these procedures enable Defendants to obtain default judgments against a large number of unsophisticated debtors and to induce unsophisticated pro se litigants to consent to judgments that Defendants could not have obtained at trial.

49.     Defendants' conduct in Plaintiffs' cases represents a pattern and practice that they pursued in hundreds of cases filed in N.Y.C. Civil Court each year.

50.     Upon information and belief, defendants are aware that many of the individual consumers sued for alleged debts owed to AT&T Wireless will fail to appear in the civil court proceeding.

51.     Upon information and belief, when the consumers do not appear, Defendants routinely move for default judgments based upon affidavits of employees of Defendant Palisades Collection, including Defendant Joanne Bergman, Vice President of Palisades' "Legal Department."

52.     Upon information and belief, in their affidavits, Defendant Joanne Bergman and other Palisades employees routinely claim to have personal knowledge of the agreements that individual consumers entered into with AT&T Wireless when Defendants have no connection to AT&T Wireless and no personal knowledge of AT&T Wireless's accounts, and possess no documents sufficient to establish the debt.

53.     Upon information and belief, Defendants obtain many hundreds of default judgments against New York City residents based upon such perjurious affidavits.

54.     Upon information and belief, not only do Defendants fail to obtain admissible evidence at the outset of the lawsuit, but they fail to obtain admissible evidence at any point in the litigation.  It appears that Defendants have no intention of ever producing admissible evidence in any of these cases.

55.     Upon information and belief, defendants can never produce a signed contract between the debtor and AT&T Wireless, nor can they ever produce proof that bills or statements were ever sent to the debtor.

56.     Upon information and belief, Defendants attempt to evade their burden of proof by employing aggressive and improper litigation tactics to obtain default judgments or to induce unsophisticated pro se litigants to admit that they owe money to AT&T Wireless.

57.     Upon information and belief, these aggressive litigation tactics include routinely sending pro se defendants detailed interrogatories and a "Notice to Admit Truth of Facts" which asks for admissions that the defendants promised to pay the charges for the AT&T Wireless account at issue, that they owe the amount alleged in the complaints, and that they received billing statements and failed to object to them.  Such demands for admissions violate New York law, which allows notices to admit for uncontroverted or easily provable facts, not fundamental issues or ultimate facts that go to the heart of the matter in controversy.  N.Y. Civil Practice Law and Rules 3123.

58.     Upon information and belief, many pro se litigants fail to respond to the discovery demands because they do not understand the questions and have little or no information to provide about the alleged AT&T Wireless debt at issue.

59.     When the pro se litigants fail to respond to Defendants' discovery demands within the statutory time period, Defendants typically file a motion asking the court to strike their answers and enter judgment on default.  Upon information and belief, defendants do not make a good faith effort to resolve the discovery matters prior to filing motions to strike the answers, as is required by New York rules.  Instead, defendants simply send a form letter to the alleged debtors insisting on compliance with the discovery demands.

60.     Upon information and belief, Defendants' aggressive and improper discovery practice reduces the likelihood that disputes will be resolved on the merits and that errors in defendants' records will be corrected.  Defendants' discovery practice also has the effect of confusing and distressing the pro se litigants, and forcing them to appear

in court multiple times within a short period, thus making it more likely that they will
default or agree to a settlement.

61.    At times, Defendants have proceeded to summary judgment and even to
trial without obtaining one shred of admissible evidence.  Defendants have been
criticized for this behavior by New York courts.

62.    For example, in the case of *Palisades Collection, LLC  v. Gonzalez*, No.
58564 CV 2004, 2005 N.Y. Misc. LEXIS 2774 (Civ. Ct. N.Y. County, Dec. 12, 2005),
Defendants moved for summary judgment against Ms. Gonzalez, who failed to appear in
her own defense, based on the affidavit of Joanne Bergman and the "documentation"
described above in paragraphs 20-22.  Despite Ms. Gonzalez's default, the Court denied
the motion.  In a written opinion, the Court variously described Ms. Bergman's affidavit
as "bald," "conclusory," "inconsistent," "inaccura[te]," "irrelevant," "insufficient," and
"of no probative value."  As for the "account summary," the court refused to allow it into
evidence, noting that it "could not be a true and correct copy of the documents allegedly
mailed to defendant since they indicate, on their face, that they were printed out on June
29, 2005, after this action was commenced."

63.    In the case of *Palisades Collection, LLC  v. Haque*, N.Y.L.J. Apr. 13,
2006, at p.20 (Civ. Ct. Queens County), Defendants took a *pro se* defendant to trial.
Defendant Joanne Bergman served as Defendants' star witness.  Defendants tried to
introduce the "account summaries" described above as evidence of Mr. Haque's debt.
However, Mr. Haque objected, saying that he had never seen those documents before.
Upon questioning, Defendant Bergman testified that the "account summaries" were not
bills, and that Defendant Palisades Collection "did not have copies of any statements

from AT&T Wireless that were allegedly sent" to Mr. Haque.  Defendants also failed to

provide any evidence of a contract between AT&T Wireless and Mr. Haque, or even

proof that Mr. Haque's account was assigned to Defendant Palisades Collection.  The

Court refused to credit any of the "evidence" or testimony proffered by Defendants, and

it awarded judgment to Mr. Haque.

64.     Upon information and belief, however, despite these rulings Defendants

continue to obtain hundreds default judgments and payment agreements from low-income

New Yorkers on the basis of Defendant Bergman's testimony and the "account

summaries" described above.


**Facts pertaining to Plaintiff Anna Rodriguez**

65.     In August 1999, an individual named Pablo Ramos opened an AT&T

Wireless account in his name.  At the time, Mr. Ramos was a friend of Plaintiff Anna

Rodriguez.

66.     Shortly after opening the account, Mr. Ramos gave Ms. Rodriguez a

cellular telephone.  He told her that the phone was a gift, and that she should feel free to

use it, and he would pay for the charges.  Mr. Ramos told Ms. Rodriguez that he had

added her as an authorized user on the account.

67.     Ms. Rodriguez never signed a contract with AT&T Wireless or agreed to

be liable for the AT&T Wireless account.

68.     Mr. Ramos also had a phone that was tied to the account.  Mr. Ramos

made the substantial majority of phone calls on the account.

69.     AT&T Wireless sent all bills to Mr. Ramos, as the account was in his name only.  Ms. Rodriguez never received a bill from AT&T Wireless.

70.     Mr. Ramos never made any payments to AT&T Wireless.

71.     In or about December 1999, AT&T Wireless cancelled Mr. Ramos' service.

72.     In or about December 2001, Ms. Rodriguez found the AT&T Wireless account listed on her credit report.  She disputed the account on the grounds that she was an authorized user who was not responsible for the bill.  Following an investigation, the credit reporting agencies deleted the AT&T Wireless account from Ms. Rodriguez's credit report.

73.     On or about September 22, 2005, Defendants commenced an action against Ms. Rodriguez in the Civil Court for the City of New York, Queens County.  The Complaint alleged that Ms. Rodriguez owed $3,949.46 to Palisades Collection as assignee of AT&T Wireless.

74.     Ms. Rodriguez does not owe this debt.

75.     The Complaint against Ms. Rodriguez contains false statements.

76.     Furthermore, at the time the litigation commenced, the statute of limitations had already run on a portion of the debt claimed in the lawsuit.

77.     Ralph Gulko, an attorney employed by Pressler & Pressler, signed the complaint, thereby personally affirming that the cause of action was not frivolous and that he had undertaken a reasonable inquiry of the underlying facts.  Gulko also signed a verification, swearing that he had "possession of the salient papers" related to this case.

78.     At the time he signed the papers, Mr. Gulko had not performed any inquiry into the merits of the case, nor did he have possession of any salient papers.

79.     The summons and complaint comprised Defendants' initial contact with Ms Rodriguez.

80.     Within five days after the initial contact, Defendants failed to send Ms. Rodriguez a letter containing the information required by § 1692(g) of the FDCPA. Specifically, Defendant never sent Plaintiff a letter stating:  (a) the amount of the debt; (b) the name of the creditor to which the debt is owed; (c) that unless the consumer, within 30 days after receipt of the notice, fails to dispute the validity of the debt, or any portion thereof, the debt will be assumed valid by the debt collector; (d) that if the consumer notifies the debt collector in writing within the thirty day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of the judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (e) that upon the consumer's written request within the thirty day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

81.     Ms. Rodriguez appeared in the case and denied responsibility for the debt. Ms. Rodriguez demanded that Defendants come forward with evidence that she is responsible for the debt, such as an original contract with her name on it.

82.     So far, the only evidence that Defendants have produced is the "account summary."  The "account summary" has Ms. Rodriguez listed as a sole account owner.

The address listed on the "account summary" does not match the address where Ms. Rodriguez lived in 1999.

83.     Ms. Rodriguez objected to the bills.  At a court date, she told an attorney employed by Pressler and Pressler that she had never seen those bills before.  She also stated that Pablo Ramos was responsible for the account.

84.     Upon information and belief, Defendants have no admissible evidence against Ms. Rodriguez and no intention of ever securing such evidence.

85.     Defendants continue to pursue the case against Ms. Rodriguez.


**Facts pertaining to Plaintiff Yudelka Robles**

86.     Six years ago, Plaintiff Yudelka Robles had an AT&T Wireless account.

87.     In or about May 2002, Ms. Robles cancelled her cell phone account and paid her final bill.  Ms. Robles never heard from AT&T Wireless again.  After several years, Ms. Robles threw out her papers concerning the AT&T Wireless account.

88.     Sometime in 2004, Ms. Robles received a call from a debt collector about her AT&T Wireless bill.  Ms. Robles explained to the debt collector that she had paid her final bill and did not owe any money to AT&T Wireless.  Ms. Robles did not hear from the debt collector again, and she thought the matter was resolved.

89.     In or about July 22, 2005, Defendants commenced an action against Ms. Robles in the Civil Court for the City of New York, New York County, for the amount of $1,020.08.

90.     Lori R. Cetani, an attorney employed by Pressler & Pressler, signed the complaint, thereby personally affirming that the cause of action was not frivolous and that she had undertaken a reasonable inquiry of the underlying facts.  Cetani also signed a verification, swearing that she had "possession of the salient papers" related to this case.

91.     At the time she signed the papers, Cetani had not performed any inquiry into the merits of the case, nor did she have possession of any salient papers.

92.     The Complaint contained false statements.

93.     Ms. Robles did not receive the summons and complaint.  Accordingly, Ms. Robles did not appear in the action.

94.     In or about December 5, 2005, Defendants moved for a default judgment.

95.     In support of the default judgment, Defendants presented an Affidavit from Defendant Joanne Bergman, who swore under penalty of perjury that she had "personal knowledge of the facts & circumstances surrounding this action."  Defendant Bergman then swore to the following "facts":

    a.  Ms. Robles and AT&T Wireless entered into a "credit agreement."

    b.  AT&T Wireless opened up a "line of credit account" in Ms. Robles' name.

    c.  Ms. Robles "utilized the credit account, made minimal payments on behalf of the account pursuant to the agreement, and has now defaulted in making the scheduled payments."

    d.  AT&T Wireless mailed Ms. Robles a statement on or about 9/10/02 in the amount of $816.67.

96.     Defendant Bergman did not have personal knowledge of any of the above "facts."

97.     Furthermore, all of the above "facts" are false.

98.     On December 5, 2005, based upon Defendant Bergman's fraudulent Affidavit, the Court entered a default judgment against Ms. Robles in the amount of $1162.97.

99.     In or about March 2006, Ms. Robles learned about the judgment for the first time when Defendants froze her bank account.

100.    On March 8, 2006, Ms. Robles filed an Order to Show Cause to vacate the default judgment.  Because Ms. Robles has only limited command of English, she was able to submit her affidavit only with the assistance of court personnel and could not clearly set forth the basis for her defenses.

101.    On March 29, 2006, the Court granted Ms. Robles' motion and vacated the judgment against her.

102.    On March 20, 2006, before the judgment against Ms. Robles had even been vacated, Defendants served Ms. Robles with interrogatories and a notice to admit truth of facts.  These discovery requests improperly demanded that Ms. Robles admit the truth of ultimate facts that constituted the heart of the dispute. Ms. Robles' responses would have been due on April 10.

103.    Ms. Robles did not respond to Defendants' discovery demands because they were written in English, and Ms. Robles primarily speaks Spanish.

104.    Two days later, on April 12, 2006, Defendants mailed Ms. Robles a letter demanding discovery responses within ten days.  Ms. Robles could not understand the

letter any better than she understood the discovery requests.  Upon information and

belief, the letter did not constitute a good faith effort to resolve the discovery dispute, a

step which is required by New York law.  On May 3, 2006, Defendants filed a motion

seeking to strike Ms. Robles' answer for failure to respond to their discovery demands.

105.    On May 5, 2006, Ms. Robles retained counsel, who assisted her to respond

to the discovery requests, thus averting the striking of her answer.

106.    Since that time, Ms. Robles has repeatedly requested that Defendants

provide her with evidence of the debt.

107.    Defendants have come forward only with the "documentation" described

in paragraphs 20-22 above.

108.    Upon information and belief, Defendants have no admissible evidence

against Ms. Robles and no intention of ever securing such evidence.

109.    Defendants continue to pursue their case against Ms. Robles.

110.    Furthermore, Ms. Robles never received a letter containing the

information required by § 1692(g) of the FDCPA.  Specifically, Defendants never sent

Ms. Robles a letter stating:  (a) the amount of the debt; (b) the name of the creditor to

which the debt is owed; (c) that unless the consumer, within 30 days after receipt of the

notice, fails to dispute the validity of the debt, or any portion thereof, the debt will be

assumed valid by the debt collector; (d) that if the consumer notifies the debt collector in

writing within the thirty day period that the debt, or any portion thereof, is disputed, the

debt collector will obtain verification of the debt or a copy of the judgment against the

consumer and a copy of such verification or judgment will be mailed to the consumer by

the debt collector; and (e) that upon the consumer's written request within the thirty day

period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

**Facts pertaining to Plaintiff Seymour Oberlander**

111.    Plaintiff Seymour Oberlander once had an AT&T Wireless account. Approximately four years ago, Mr. Oberlander's employer offered to give him a free phone.  Mr. Oberlander did not need two phones, so he called AT&T Wireless to cancel his account.  An AT&T representative advised Mr. Oberlander that he could avoid cancellation penalties by finding someone else to take over his contract.

112.    At the time, Plaintiff's son worked for a company called Universal Furniture, which was owned or operated by an individual named Mr. Pfeffercorn.  Mr. Pfeffercorn needed an additional phone for his business, so he offered to assume Mr. Oberlander's AT&T Wireless contract.

113.    Accordingly, approximately four years ago, Mr. Oberlander, Mr. Pfeffercorn, and AT&T Wireless executed an agreement whereby all responsibility for the account was transferred to Mr. Pfeffercorn.  At the time of the transfer, Mr. Oberlander had paid all that he owed to AT&T Wireless.

114.    Mr. Oberlander never heard from AT&T Wireless again.  After several years passed, Mr. Oberlander threw away all the papers concerning his AT&T Wireless account.

115.    In or about 2005, Mr. Oberlander received a call from a debt collector regarding an alleged debt owed on the AT&T Wireless account.  Mr. Oberlander explained to the debt collector that Mr. Pfeffercorn had assumed the account and was

responsible for the debt, if any.  The debt collector did not contact Mr. Oberlander again, and it never sent Mr. Oberlander anything in writing.  Mr. Oberlander assumed the matter was resolved.

116.    In or about June 2006, Mr. Oberlander received a summons and complaint from Pressler and Pressler alleging that he owed $1201.81 to Palisades Collection as assignee of AT&T Wireless.

117.    Mr. Oberlander does not owe this debt.

118.    The complaint against Mr. Oberlander contains false statements.

119.    Richard Franklin, an attorney employed by Pressler & Pressler, signed the complaint, thereby personally affirming that the cause of action was not frivolous and that he had undertaken a reasonable inquiry of the underlying facts.  Franklin also signed a verification, swearing that he had "possession of the salient papers" related to this case.

120.    At the time he signed the papers, Franklin had not performed any inquiry into the merits of the case, nor did he have possession of any salient papers.

121.    The summons and complaint constituted Defendants' initial contact with Mr. Oberlander.

122.    Within five days after the initial contact, Mr. Oberlander never received a letter containing the information required by § 1692g of the FDCPA.  Specifically, Defendants never sent Plaintiff a letter stating:  (a) the amount of the debt; (b) the name of the creditor to which the debt is owed; (c) that unless the consumer, within 30 days after receipt of the notice, fails to dispute the validity of the debt, or any portion thereof, the debt will be assumed valid by the debt collector; (d) that if the consumer notifies the debt collector in writing within the thirty day period that the debt, or any portion thereof,

is disputed, the debt collector will obtain verification of the debt or a copy of the judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (e) that upon the consumer's written request within the thirty day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

123.    On June 23, 2006, Mr. Oberlander appeared in the case and denied owing money to Palisades Collection.  The initial court date was scheduled for August 7, 2006.

124.    On July 5, 2006, Defendants served Mr. Oberlander with interrogatories and a notice to admit truth of facts.  These discovery requests improperly demanded that Mr. Oberlander admit the truth of ultimate facts that constituted the heart of the dispute. Mr. Oberlander's response would have been due on July 28, 2006.

125.    On July 18, 2006, Mr. Oberlander retained counsel, who forwarded a Notice of Appearance to Defendant Pressler and Pressler.

126.    On July 31, 2006, Defendants mailed Mr. Oberlander a letter demanding discovery responses within ten days.  This letter did not constitute a good faith effort to resolve the discovery dispute, a step which is required by New York law.

127.    Furthermore, Defendants' actions in communicating directly with Mr. Oberlander, despite the fact that they knew he was represented by counsel, violated ethical rules and § 1692c(a) of the Fair Debt Collection Practices Act.

128.    Mr. Oberlander has demanded that Defendants produce evidence of his debt, but, so far, Defendants have produced nothing.

129.    Upon information and belief, Defendants have no admissible evidence against Mr. Oberlander and no intention of ever securing such evidence.

130.    Still, Defendants continue to pursue the case against Mr. Oberlander.

**Facts pertaining to Defendant Charlotte Foley**

131.    Plaintiff Charlotte Foley has never had an AT&T Wireless account.

132.    However, in or about November 28, 2005, Defendants commenced an action against Ms. Foley in the Civil Court for the City of New York, Kings County, for the amount of $2648.36, allegedly owed to Defendant Palisades Collection as assignee of AT&T Wireless.

133.    Ralph Gulko, an attorney employed by Pressler & Pressler, signed the complaint, thereby personally affirming that the cause of action was not frivolous and that he had undertaken a reasonable inquiry into the underlying facts.  Gulko also signed a verification, swearing that he had "possession of the salient papers" related to this case.

134.    At the time he signed the papers, Gulko had not performed any reasonable inquiry into the merits of the case, nor did he have possession of any salient papers.

135.    The complaint against Ms. Foley contained false statements.

136.    Defendants failed to serve Ms. Foley with the summons and complaint. Accordingly, Ms. Foley did not appear in the action.

137.    In or about June 22, 2006, Defendants moved for a default judgment.

138.    In support of the default judgment, Defendants presented an Affidavit from Defendant Yoel Cruz, an "Account Specialist" employed by Defendant Palisades Collection, who swore under penalty of perjury that she had "personal knowledge of the facts & circumstances surrounding this action."  Defendant Cruz then swore to the following "facts":

    a.   Ms. Foley and AT&T Wireless entered into a "credit agreement."

    b.   AT&T Wireless opened up a "line of credit account" in Ms. Foley's name.

    c.   Ms. Foley "utilized the credit account, made minimal payments on behalf of the account pursuant to the agreement, and has now defaulted in making the scheduled payments."

    d.   AT&T Wireless mailed Ms. Foley a statement on or about 7/31/00 in the amount of $1,799.56.

139.    Defendant Cruz did not have personal knowledge of any of the above "facts."

140.    Furthermore, all of the above "facts" are false.

141.    On June 22, 2006, based upon Defendant Cruz's false Affidavit, the Court entered a default judgment against Ms. Foley in the amount of $2804.03.

142.    In or about August 2006, Ms. Foley learned about the judgment for the first time when Defendants sent a notice of income execution to her place of employment.

143.    On August 23, 2006, Ms. Foley filed an Order to Show Cause to vacate the default judgment and income execution.

144.    On September 7, 2006, the Court granted the motion and vacated the judgment and income execution against Ms. Foley.

145.    Ms. Foley had no knowledge or information about this debt whatsoever. Ms. Foley requested that Defendants provide her with information about the debt.

146.     Defendants had no admissible evidence against Ms. Foley and no intention of ever securing such evidence.

147.     After the filing of the instant action, Defendants agreed to dismiss their suit against Ms. Foley with prejudice.

148.     Defendants now admit that Ms. Foley never had an AT&T Wireless account.

149.     Defendants' Complaint and the Affidavit of Yoel Cruz contained false statements.

150.     Furthermore, Ms. Foley never received a letter containing the information required by § 1692g of the FDCPA.  Specifically, Defendants never sent Ms. Torres a letter stating:  (a) the amount of the debt; (b) the name of the creditor to which the debt is owed; (c) that unless the consumer, within 30 days after receipt of the notice, fails to dispute the validity of the debt, or any portion thereof, the debt will be assumed valid by the debt collector; (d) that if the consumer notifies the debt collector in writing within the thirty day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of the judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (e) that upon the consumer's written request within the thirty day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

**Facts pertaining to Plaintiff Carmen Torres**

151.     Plaintiff Carmen Torres is a senior citizen who lives on Supplemental Security Income (SSI).

152.     Ms. Torres has never had an AT&T Wireless account.

153.     However, at some point an unknown individual stole Ms. Torres' identity. The thief apparently used Ms. Torres' name and social security number to open an AT&T Wireless account.

154.     Ms. Torres had no knowledge of this AT&T Wireless account, which was fraudulently opened in her name.  Ms. Torres never authorized, used, or benefited from this account in any way.

155.     In or about September 23, 2005, Defendants commenced an action against Ms. Torres in the Civil Court for the City of New York, Kings County, for the amount of $928.51.

156.     Ralph Gulko, an attorney employed by Pressler & Pressler, signed the complaint, thereby personally affirming that the cause of action was not frivolous and that he had undertaken a reasonable inquiry into the underlying facts.  Gulko also signed a verification, swearing that he had "possession of the salient papers" related to this case.

157.     At the time he signed the papers, Gulko had not performed any inquiry into the merits of the case, nor did he have possession of any salient papers.

158.     Defendants failed to serve Ms. Torres with the summons and complaint. Accordingly, Ms. Torres did not appear in the action.

159.     In or about February 2, 2006, Defendants moved for a default judgment.

160.    In support of the default judgment, Defendants presented an Affidavit from Defendant Elaine Lucas, an "Undersigned Account Specialist" employed by Defendant Palisades Collection, who swore under penalty of perjury that she had "personal knowledge of the facts & circumstances surrounding this action."  Defendant Lucas then swore to the following "facts":

      a.   Ms. Torres and AT&T Wireless entered into a "credit agreement."

      b.   AT&T Wireless opened up a "line of credit account" in Ms. Torres' name.

      c.   Ms. Torres "utilized the credit account, made minimal payments on behalf of the account pursuant to the agreement, and has now defaulted in making the scheduled payments."

      d.   AT&T Wireless mailed Ms. Torres a statement on or about 9/18/00 in the amount of $641.08.

161.    Defendant Lucas did not have personal knowledge of any of the above "facts."

162.    Furthermore, all of the above "facts" are false.

163.    On February 2, 2006, based upon Defendant Lucas' fraudulent Affidavit, the Court entered a default judgment against Ms. Torres in the amount of $1162.97.

164.    In or about April 2006, Ms. Torres learned about the judgment for the first time when Defendants froze her bank account.

165.    On April 26, 2006, Ms. Torres filed an Order to Show Cause to vacate the default judgment.

166.     On May 17, 2006, the Court granted the motion on consent and vacated the judgment against Ms. Torres.

167.     Despite the court order, Defendants continued to hold and restrain Ms. Torres' bank account for an additional three months, until August 8, 2006.

168.     Ms. Torres requested that Defendants provide her with evidence of the debt, but Defendants provided nothing.

169.     In fact, Defendants had no admissible evidence against Ms. Torres.

170.     On or about August 10, 2006, Defendants attempted to discontinue the lawsuit against Ms. Torres.  However, Defendants failed to notify Ms. Torres' counsel of the "discontinuance."

171.     After the filing of the instant action, Defendants stipulated to discontinue their suit against Ms. Torres with prejudice.

172.     Defendants now admit that Ms. Torres never had an AT&T Wireless account.

173.     Defendants' Complaint and the Affidavit of Elaine Lucas contained false statements.

174.     Furthermore, Ms. Torres never received a letter containing the information required by § 1692g of the FDCPA.  Specifically, Defendants never sent Ms. Torres a letter stating:  (a) the amount of the debt; (b) the name of the creditor to which the debt is owed; (c) that unless the consumer, within 30 days after receipt of the notice, fails to dispute the validity of the debt, or any portion thereof, the debt will be assumed valid by the debt collector; (d) that if the consumer notifies the debt collector in writing within the thirty day period that the debt, or any portion thereof, is disputed, the debt collector will

obtain verification of the debt or a copy of the judgment against the consumer and a copy

of such verification or judgment will be mailed to the consumer by the debt collector; and

(e) that upon the consumer's written request within the thirty day period, the debt

collector will provide the consumer with the name and address of the original creditor, if

different from the current creditor.


### Facts pertaining to Plaintiff April Thomas

175.    Plaintiff April Thomas lives on Supplemental Security Income (SSI).

176.    Ms. Thomas has never had an AT&T Wireless account.

177.    However, at some point an unknown individual stole Ms. Thomas'

identity.  The thief apparently used Ms. Thomas' name and social security number to

open an AT&T Wireless account.

178.    Ms. Thomas had no knowledge of this AT&T Wireless account, which

was fraudulently opened in her name.  Ms. Thomas never authorized, used, or benefited

from this account in any way.

179.    In or about March 20, 2006, Defendants commenced an action against Ms.

Thomas in the Civil Court for the City of New York, Bronx County, for the amount of

$883.72.

180.    Richard Franklin, an attorney employed by Pressler & Pressler, signed the

complaint, thereby personally affirming that the cause of action was not frivolous and

that he had undertaken a reasonable inquiry into the underlying facts.  Franklin also

signed a verification, swearing that he had "possession of the salient papers" related to this case.

181.    At the time he signed the papers, Franklin had not performed any inquiry into the merits of the case, nor did he have possession of any salient papers.

182.    The Complaint against Ms. Thomas contained false statements.

183.    On June 2, 2006, Ms. Thomas appeared in court and denied owing any money to Defendants.  The court set a date for June 20, 2006.

184.    On June 12, 2006, Defendants served Ms. Thomas with interrogatories and a notice to admit truth of facts.  These discovery requests improperly demanded that Ms. Thomas admit the truth of ultimate facts that constituted the heart of the dispute. Ms. Thomas's response would have been due on July 5, 2006.  Ms. Thomas did not understand the questions, so she did not answer them.

185.    On July 6, 2006, Defendants mailed Ms. Thomas a letter demanding discovery responses within ten days.  This letter did not constitute a good faith effort to resolve the discovery dispute, a step which is required by New York law.

186.    On July 20, Ms. Thomas appeared in court and explained that she was an identity theft victim and had no information about the account.  She asked the Pressler and Pressler attorney for information about the debt, but he had no documents or evidence against her.  The court set another date for September 27, 2007.

187.    On July 21, Defendants filed a motion seeking to strike Ms. Thomas' answer for failure to respond to their discovery demands.  The motion was scheduled for August 24, 2006.

188.     On or about August 15, 2006, Ms. Thomas' counsel telephoned a Pressler and Pressler attorney to inform him that she planned to enter a notice of appearance and provide him with discovery responses.  She also stated that Ms. Thomas was an identity theft victim whose only income was SSI.  The Pressler and Pressler attorney responded that there was no need to make a formal appearance because if Ms. Thomas appeared on August 24, 2006, and answered the interrogatories stating that she knew nothing about the account, he would discontinue the case.

189.     Ms. Thomas appeared on August 24, 2006, and answered the questions as instructed.  However, the Pressler and Pressler attorney failed to discontinue the case as promised.

190.     Ms. Thomas appeared in court again on September 27, 2006.  The Pressler and Pressler attorney again had no evidence of the debt she allegedly owed.  The Pressler and Pressler attorney tried to pressure Ms. Thomas into making a payment arrangement of $100 per month.  He also scheduled another court date for November 20, 2006.

191.     On October 26, 2006, Defendant retained counsel to defend her in this matter.

192.     Defendants have no admissible evidence against Ms. Thomas and no intention of ever securing such evidence.

193.     Furthermore, Ms. Thomas never received a letter containing the information required by § 1692g of the FDCPA.  Specifically, Defendants never sent Ms. Torres a letter stating:  (a) the amount of the debt; (b) the name of the creditor to which the debt is owed; (c) that unless the consumer, within 30 days after receipt of the notice, fails to dispute the validity of the debt, or any portion thereof, the debt will be assumed

valid by the debt collector; (d) that if the consumer notifies the debt collector in writing within the thirty day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of the judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (e) that upon the consumer's written request within the thirty day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

## FIRST CLAIM FOR RELIEF

194.    Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5) 1692e(10) and 1692f by making false and misleading representations, and engaging in unfair practices.  Defendants violations include, but are not limited to:

a.  Falsely stating that debts were owed by the plaintiffs;

b.  Attempting to collect amounts from the plaintiffs that were not actually due and/or were not authorized by the agreement creating the alleged debts;

c.  Making implicit and explicit representations that defendants possessed proof of the debts allegedly owed by plaintiffs, or that defendants could obtain such proof upon reasonable investigation, even though defendants had no such proof and no intent to obtain it;

d.  Falsely creating the impression that defendants had proof of the debt by stating that they were in possession of "salient papers";

e.  Falsely creating the impression that attorneys had meaningful

involvement and exercised independent professional judgment in the

preparation of the lawsuit and the decision to pursue legal claims

against the plaintiffs.

195.   As a direct and proximate result of Defendants' violations, Plaintiffs have

sustained actual damages in an amount to be proved at trial.


## SECOND CLAIM FOR RELIEF

196.   Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. §

1692e(5) by threatening action that could not legally be taken or that defendants did not

intend to take.  Defendants violated this provision by threatening to take judgments

against the Plaintiffs when they had no ability to take a judgment other than on default or

by taking advantage of Plaintiffs' lack of sophistication.

197.   As a direct and proximate result of Defendants' violations, Plaintiffs have

sustained actual damages in an amount to be proved at trial.


## THIRD CLAIM FOR RELIEF

198.   Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. §

1692d by engaging in conduct the natural consequence of which is to harass, oppress, or

abuse any person in connection with the collection of a debt.  Defendants violated this

provision by engaging in improper discovery practice seeking admissions of ultimate

facts in the state court cases.  Defendants' practice was calculated to evade decisions on

the merits of their claims, to avoid correction of errors by the pro se litigants, to obtain

judgments on default, or to induce the pro se litigants to agree to pay amounts for which

defendants would have been otherwise unable to secure a judgment.

199.    As a direct and proximate result of Defendants' violations, Plaintiffs have

sustained actual damages in an amount to be proved at trial.


## FOURTH CLAIM FOR RELIEF

200.    Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. §§

1692e, 1692e(2)(A), 1692e(10) and 1692f by filing false affidavits in order to obtain

default judgments against the plaintiffs.

201.    As a direct and proximate result of Defendants' violations, Plaintiffs have

sustained actual damages in an amount to be proved at trial.


## FIFTH CLAIM FOR RELIEF

202.    Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. §

1692g by failing to send each Plaintiff, within five days of the initial contact, a letter

stating:  (a) the amount of the debt; (b) the name of the creditor to which the debt is

owed; (c) that unless the consumer, within 30 days after receipt of the notice, fails to

dispute the validity of the debt, or any portion thereof, the debt will be assumed valid by

the debt collector; (d) that if the consumer notifies the debt collector in writing within the

thirty day period that the debt, or any portion thereof, is disputed, the debt collector will

obtain verification of the debt or a copy of the judgment against the consumer and a copy

of such verification or judgment will be mailed to the consumer by the debt collector; and

(e) that upon the consumer's written request within the thirty day period, the debt

collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

203.    As a direct and proximate result of Defendants' violations, Plaintiffs have sustained actual damages in an amount to be proved at trial.

## SIXTH CLAIM FOR RELIEF

204.    Defendants violated § 349 of the New York General Business Law by using deceptive acts and practices in the conduct of their business.

205.    As a result of these violations of § 349 of the General Business Law, Plaintiffs are entitled to an injunction barring Defendants from engaging in deceptive acts and practices, and to recover for actual damages, costs and attorney's fees.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1.    Enter a declaratory judgment that Defendants' acts and practices violated the FDCPA;

2.    Enjoin Defendants from committing similar violations in the future;

3.    Award actual damages to the Plaintiffs;

4.    Award statutory damages to the Plaintiffs;

5.    Award reasonable attorney's fees to the Plaintiffs;

6.    Award costs to the Plaintiffs; and,

7.    Award such other and further relief as may be just and proper.

**JURY TRIAL DEMANDED.**

Dated: December 22, 2006
      New York, NY

                                   Respectfully Submitted,

                                   _____

                                   Claudia Wilner, Esq. (CW 1995)
                                   Consumer Financial Justice Project
                                   NEIGHBORHOOD ECONOMIC
                                   DEVELOPMENT ADVOCACY PROJECT
                                   (NEDAP)
                                   73 Spring Street, Suite 506
                                   New York, NY 10012
                                   t:  212-680-5100

                                   _____

                                   John C. Gray, Esq.
                                   Edward Josephson, Of Counsel (EJJ-7815)
                                   SOUTH BROOKLYN LEGAL SERVICES,
                                   INC.
                                   105 Court Street
                                   Brooklyn, NY 11201
                                   t:  718-237-5500

                                   ATTORNEYS FOR PLAINTIFFS