**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
ANNA RODRIGUEZ, et al.,

                 Plaintiffs,

          - against -

PRESSLER AND PRESSLER, L.L.P., et al.
                 Defendants.
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

CV 06-5103 (BMC) (JO)

**JAMES ORENSTEIN, Magistrate Judge:**

The plaintiffs in this case have agreed to accept the entry of judgment in their favor in the amount of $2,000 apiece, for a total of $10,000. That figure represents the maximum award of statutory damages for the successful prosecution of a single claim by each plaintiff under the Fair Debt Collection Practices Act (the "FDCPA" or "Act"). In accepting the defendants' offer of judgment pursuant to Federal Rule of Civil Procedure 68, the plaintiffs gave up their claims for actual damages they said they had suffered by reason of the defendants' manifold violations of the Act, secured no relief whatsoever on their claim under New York state law, and abandoned their claims for declaratory and injunctive relief. The parties agree that the plaintiffs are entitled by law to the reimbursement of their reasonable attorneys' fees and litigation costs, but they disagree as to the amount. Specifically, the plaintiffs contend that in their pursuit of their $10,000 judgment, they reasonably incurred fees totaling $88,620, and costs in the amount of $9,064.04. The defendants assert that the fee award should be far more limited. The Honorable Brian M. Cogan, United States District Judge, has referred the matter to me for a report and recommendation. I now make my report and respectfully recommend, for the reasons set forth below, that the court award a total of $14,973.75 in attorneys' fees and $9,064.04 in other costs.

I. Background

Plaintiffs Anna Rodriguez, Yudelka Robles, Seymour Oberlander, Charlotte Foley, Carmen Torres, and April Thomas are consumers who live in the New York metropolitan area. Defendant Pressler and Pressler, LLP ("Pressler"), is a limited liability partnership based in Cedar Knolls, New Jersey. As a limited liability partnership, Pressler represents its clients – primarily debt collectors – in civil litigation to collect debts owed. Defendant Palisades Collection, LLC ("Palisades"), a limited liability corporation organized under the laws of New Jersey, purchases and collects debts from consumers, and is the employer of individual defendants Joanne Bergman, Yoel Cruz, and Elaine Lucas (collectively with Palisades, the "Palisades Defendants"). *See* Docket Entry ("DE") 8 (Amended Complaint) ¶¶ 4-16; DE 9 (Palisades Answer) ¶¶ 4-9, 13-16; DE 10 (Pressler Answer) ¶¶ 11-12. Palisades acquired certain debts from AT&T Wireless, including debts allegedly owed by each of the plaintiffs. It then engaged Pressler to serve as its counsel in seeking collection on those debts. Pressler, acting on behalf of its client Palisades, initiated civil actions against each of the plaintiffs for that purpose. *See* Amended Complaint ¶¶ 27, 30; Palisades Answer ¶¶ 18, 27; Pressler Answer ¶ 30. The instant case arises from those lawsuits: the plaintiffs contend that in prosecuting the collection actions, the defendants violated the FDCPA.

The plaintiffs filed their original complaint on September 21, 2006, DE 1, and then amended it three months later. DE 8. As amended, the plaintiffs' Complaint alleged four separate violations of the FDCPA. Specifically, they accused the defendants of making false and misleading representations; engaging in unfair practices; engaging in conduct that foreseeably results in harassment, oppression, or abuse of a person in connection with the collection of a

2

debt; and failing to send required correspondence to each plaintiff about the debt for which they sought collection. *See* Complaint ¶¶ 194, 196, 198, 202 (alleging violations of, respectively, 15 U.S.C. §§ 1692e, 1692f, 1692d, 1692g). The plaintiffs also sought to hold the defendants liable for a violation of a provision of New York state law that prohibits the use of deceptive acts and practices when conducting business. *See* Complaint ¶ 204 (alleging violation of N.Y. Gen. Bus. Law § 349 (McKinney's 2004)). On the basis of those alleged violations, the plaintiffs sought declaratory and injunctive relief, actual damages, statutory damages, and reasonable costs and attorneys' fees. Amended Complaint at 34 (Request For Relief).

After the Palisades Defendants and Pressler filed their respective answers on January 5 and 6, 2007, the parties engaged in the discovery process. During that period, they brought a number of discovery disputes before Judge Cogan. *See* DE 12; DE 22; Order dated February 14, 2007; Order dated February 20, 2007; Order dated May 8, 2007. On June 22, 2007, the parties resolved their dispute as to liability. Pursuant to Federal Rule of Civil Procedure ("Rule") 68, Pressler offered to pay each plaintiff $1,000.00 in damages – the maximum statutory damages award under the FDCPA, *see* 15 U.S.C.A. § 1692k(a)(2)(A) – and the Palisades Defendants offered as a group to do likewise. The plaintiffs accepted both offers. By making and accepting the offers, the parties disposed of all substantive claims in the Amended Complaint and agreed that the defendants would pay the plaintiffs' litigation costs, including reasonable attorneys' fees, in an amount that the court would later determine. *See* DE 25; DE 26; DE 27. The plaintiffs later filed the instant application for costs and fees on August 17, 2007. DE 31.

In support of their motion, the plaintiffs submitted affidavits by two of their attorneys, Matthew D. Brinckerhoff ("Brinckerhoff") and Claudia Wilner ("Wilner"), as well as a

memorandum of law. *See* DE 32 ("Brinckerhoff Aff."); DE 33 ("Wilner Aff."); DE 34 ("Memo."). The defendants did not file any response to the motion by the original deadline for doing so; instead, four days after that deadline, they sought additional time to submit their opposition. DE 37. Rather than extend such a routine courtesy, the plaintiffs' counsel (who had previously sought and obtained an extension of their own in submitting the motion, without objection from the defendants; *see* DE 30; Order dated July 11, 2007) opposed the request for relief. DE 38. Observing that such opposition was "without merit[,] borderline sanctionable[,]" and "the kind of tactic that causes disdain among the public for lawyers and the legal system" Judge Cogan granted the extension over the plaintiffs' counsel's objection. DE 39. On October 3, 2007, the defendants submitted a joint response to the motion including a memorandum of law and an affidavit by Pressler's attorney Mitchell L. Williamson. DE 42-1 ("Opp."); DE 42-2 ("Williamson Aff."). The plaintiffs submitted a reply memorandum two weeks later. DE 43 ("Reply"). Judge Cogan then referred the motion to me for this report and recommendation. Order Dated October 22, 2007.

II.  Discussion

   A.  Attorneys' Fees

      1.  Applicable Law

A plaintiff who succeeds in prosecuting a claim under the FDCPA is entitled to recover "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3); *see Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 28 (2d Cir. 1989) (citing *Emanuel v. American Credit Exchange*, 870 F.2d 805, 809 (2d Cir. 1989)). The task of determining the amount of the fee award is committed to the court's discretion.

The starting point for determining a reasonable fee is to multiply a reasonable hourly rate for the attorney whose fee is to be reimbursed by the number of hours the attorney reasonably expended on the successful client's behalf – a form of analysis known alternately as the "lodestar method" or "'presumptively reasonable fee analysis.'" *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008); *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997); *Overcash v. United Abstract Group, Inc.*, 549 F. Supp. 2d 193, 197 (N.D.N.Y. 2008) (quoting *Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 141 (2d Cir. 2007)); *King v. JCS Enterprises, Inc.*, 325 F. Supp. 2d 162, 166 (E.D.N.Y. 2004) (citing *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004) and *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)). In performing such analysis the court should not mechanically rely on an attorney's claimed hours and rates. Rather, a court considering a fee application must determine "what a reasonable, paying client would be willing to pay" in light of all the relevant circumstances of the case. *Arbor Hill*, 522 F.3d at 184. District courts have broad discretion, using "their experience with the case, as well as their experience with the practice of law, to assess the reasonableness" of each component of a fee award. *Fox Indus., Inc. v. Gurovich*, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)).[1]

---

[1] Courts considering a fee application should take into account – but not apply in any mechanical way – the following twelve so-called *Johnson* factors:

> (1) time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the 'undesirability' of

Once it determines the presumptively reasonable fee, the court has further "discretion to fashion a reasonable award of attorney's fees under the FDCPA" by adjusting the fee upward or downward to reflect the circumstances of the case. *Rivera v. Corporate Receivables, Inc.*, 540 F. Supp. 2d 329, 337 (D. Conn. 2008); *Sparkman v. Zwicker & Associates, P.C.*, 2006 WL 463939, at *2 (E.D.N.Y. Feb. 27, 2006) ("Calculation of the lodestar amount is only the first step in determining a reasonable award of attorney's fees"). Central to that analysis is the extent to which the plaintiff seeking the reimbursement of fees succeeded on all its claims and a comparison of the relief sought to that actually achieved. *Rivera*, 540 F. Supp. 2d at 338 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)); *see also Sparkman*, 2006 WL 463939, at *2 (describing "the degree of success obtained" as the "'most critical factor' in determining the reasonableness of a fee award") (quoting *Hensley*, 461 U.S. at 436).

While the degree of success is an important consideration, the court may *not* reduce a presumptively reasonable fee simply because it dwarfs the successful client's recovery. The FDCPA "'was enacted in part to secure legal representation for plaintiffs whose ... injury was too small, in terms of expected monetary recovery, to create an incentive for attorneys to take the

---

the case; (11) the nature and length of the profession relationship with the client; and (12) awards in similar cases.

*Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974); *see United States Football League v. National Football League*, 887 F.2d 408, 415 (2d Cir. 1989) (adopting *Johnson* factor analysis). Prior to *Arbor Hill*, such factors would be taken into account in considering an adjustment to a "lodestar" fee. Under current law, such factors should generally be considered in determining a reasonable hourly rate for the attorney to be reimbursed. *See Arbor Hill*, 522 F.3d at 190. For the most part I have done so in the discussion that follows, although for reasons explained below, I consider the extent of the plaintiffs' success (analogous to the eighth *Johnson* factor) in the context of an adjustment to the plaintiffs' attorneys' otherwise presumptively reasonable fee rather than in the context of determining an appropriate hourly rate.

case under conventional fee arrangements.'" *Rivera*, 540 F. Supp. 2d at 338 (quoting *Kassim v. Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005)). But while the modesty of a plaintiff's award is not in itself a basis for imposing modesty on counsel, the modesty of counsel's success – measured against the original goals of the litigation – is. *See Hensley*, 461 U.S. at 440 ("A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole.").

It is against this legal framework that I consider the plaintiffs' request for reimbursement of $86,620.00 in attorneys' fees for 269.90 hours of work by two attorneys. Specifically, the plaintiffs seek reimbursement for 51 hours of attorney Brinckerhoff's time at an hourly rate of $450.00 and reimbursement for 218.90 hours of attorney Wilner's time at an hourly rate of $300.00. Memo. at 1; Wilner Aff. ¶ 26.[2] As explained below, I conclude that the court should award reimbursement based on lower hourly rates for each attorney ($200 for each, and only half that for time devoted to travel rather than actual work) and slightly fewer hours than the plaintiffs claim. Moreover, because even that reduced fee would vastly overcompensate the attorneys for a case they made far more complicated than necessary and that achieved far less success than failure, I further conclude that the court should reduce the award to a total of $14,973.75.

---

[2] The plaintiffs' notice of motion neither specified the amount of fees sought nor the number of compensable hours that each attorney expended on the litigation. *See* DE 31. The plaintiffs' memorandum provides argument in support of reimbursement for only 207.20 hours of attorney Wilner's time; the larger number of hours cited above appears only in Wilner's affidavit. Compare Memo. at 1 *with* Wilner Aff. ¶ 26. At the hourly rate of $300 that Wilner seeks to charge, the dollar-value of the discrepancy of almost 12 hours – which appears to reflect nothing worse than sloppy work by the attorneys who seek to justify their fee – amounts to $3,510.00. I further note that Wilner's actual time records list the total time she spent on this case as 218.7 hours; the 12-minute difference between that figure and the one in her affidavit is immaterial.

2. Hourly Rates

Attorney Brinckerhoff seeks compensation at an hourly rate of $450. He is a member of Emery Celli Brinckerhoff & Abady LLP (the "Emery Firm"), a small civil rights law firm with seven partners and six associates, and he describes himself as a "civil rights lawyer with seventeen years of experience." Brinckerhoff Aff. ¶¶ 1, 4, 9. Attorney Wilner seeks compensation at an hourly rate of $300. She graduated from law school in 2002, and is admitted to practice in New York. She has worked as a staff attorney at the Neighborhood Economic Development Advocacy Project ("NEDAP") since 2005 and directs its Consumer Law Project. In that capacity she has been defending individuals sued in debt collection actions since 2006, and in doing so developed a legal theory about ways in which debt buyers and their counsel may violate the FDCPA – a theory that she applied in this case. Wilner Aff. ¶¶ 1, 5, 6, 16, 18, 21.[3] For the reasons set forth below, I conclude that under the circumstances of this case, the rates that both attorneys claim are unreasonably high.

As the court in *Arbor Hill* made clear – admittedly in the context of applying a different fee-shifting statute – the ultimate task in considering a reasonable hourly rate is to determine, under all of the circumstances, "the rate a paying client would be willing to pay." 522 F.3d at 190. I am persuaded that a paying client would be unwilling to pay hourly rates of $450 and $300 for the services that Brinckerhoff and Wilner have rendered here. The FDCPA provides for fee shifting so that attorneys will not be dissuaded from accepting engagement in cases in which plaintiffs seek the modest remedies available under that statute. This district has no shortage of

---

[3] Wilner does not mention the year she was admitted to practice in New York. I take judicial notice of the fact that she was so admitted in 2004. *See* Attorney Directory – Attorney Search, http://iapps.courts.state.ny.us/attorney/AttorneySearch (last visited on September 11, 2008).

attorneys willing to do just that, and as a result, the judges of this district have found much lower rates to be reasonable in several recent cases under the FDCPA. *See Sparkman*, 2006 WL 463939, at *1 (summarizing rates approved in this district for experienced attorneys in FDCPA cases and concluding that $200 per hour is a reasonable rate for such work); *see also Dowling v. Kucker Kraus & Bruh, LLP*, 2005 WL 1337442, at *8 (S.D.N.Y. June 6, 2005) (holding $200 to be a reasonable hourly rate in FDCPA cases for experienced attorneys in New York City); *Kapoor v. Rosenthal*, 269 F. Supp. 2d 408, 415 (S.D.N.Y. 2003) (summarizing cases and holding $225 to be a reasonable rate for highly experienced attorneys in FDCPA litigation). Only a client with no concern for the cost of representation would heedlessly retain counsel at the higher fees sought by Brinckerhoff and Wilner to pursue novel theories of liability rather than engage one of several attorneys in this district who routinely prosecute (and win) more prosaic claims for much lower compensations.

I credit Brinckerhoff's assertion that he regularly bills his paying clients at the hourly rate of $450, and I further note that he was recently reimbursed at an hourly rate of $400 in a case in the District of Nevada involving ballot-access rights. *See* Brinckerhoff Aff. ¶¶ 6-7 & Ex. C. Neither fact is particularly apposite to the analysis under *Arbor Hill*. Nothing in the record suggests that Brinckerhoff regularly practices in the field of FDCPA cases or that any client has ever paid him the rate he now seeks to do such work. As the court in *Arbor Hill* explicitly recognized, case-specific factors such as "the nature of representation and type of work involved

in a case ... may justify compensating an attorney at a rate lower than his or her customary rate for a different type of practice[.]" 522 F.3d at 184 n.2.[4]

As a staff attorney for NEDAP, Wilner does not usually charge her clients for her services. Wilner Aff. ¶ 22. As a result, unlike Brinckerhoff, she does not base her claimed hourly rate on the inapposite fee she charges others for her work in different sorts of cases; instead, she bases it on the inapposite fee some other attorney with comparable credentials would charge others for work in different sorts of cases if she were associated with a firm like the Emery Firm. Wilner Aff. ¶ 24; Brinckerhoff Aff. ¶ 11. Such reasoning shares the same flaws as, but is even weaker than, that offered in support of Brinckerhoff's claimed rate.[5] Like Brinckerhoff, Wilner must be compensated at the rate a paying client would be willing to pay a lawyer with similar experience to litigate a claim under the FDCPA.

---

[4] For the same reason, I take note of, but give little weight to, the fact that a court in the Southern District of New York approved an hourly rate of $425 (reduced from the requested hourly rate of $450) for Brinckerhoff's work in another recent case. *See Wise v. Kelly*, 2008 WL 482399, at *5-9 (S.D.N.Y. Feb. 21, 2008). That case was a putative class action brought against several municipal and state defendants to prohibit enforcement of an anti-begging statute that was found to be unconstitutional. *See generally Brown v. Kelly*, 2007 WL 1573957, at *1-3 (S.D.N.Y. May 31, 2007) (describing background of the case). The court approved the high hourly rate in part because Brinckerhoff "has had extensive experience over the course of his career litigating civil rights cases against government entities[.]" *Wise v. Kelly*, 2008 WL 482399, at *5. Such experience plainly provides no reason to approve a similarly high hourly rate in this case.

[5] Brinckerhoff and Wilner actually speculate that Wilner would command an even higher hourly rate of $325 if she were associated with the Emery firm. However, they have adjusted that estimated hourly rate down to $300 on the ground that NEDAP has lower overhead expenses. Wilner Aff. ¶ 25; Brinckerhoff Aff. ¶ 13. While that adjustment inures slightly to the defendants' benefit, it is just as inconsistent with the case law of this circuit as the portions of the plaintiffs' analysis that are more favorable to themselves and their counsel. *See McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 97 n.6 (2d Cir. 2006) ("Overhead is not a valid reason for why certain attorneys should be awarded a higher or lower hourly rate.").

In that regard, I note that this court recently endorsed the same $300 rate that Wilner now seeks in another lawsuit involving claims under the FDCPA in which she represented a prevailing plaintiff. *See* DE 44 (letter dated December 13, 2007, enclosing copy of order dated November 10, 2007, in *Mona Richardson v. Professional Recovery Systems LLC, et al.*, docket no. 07-CV-3666 (BMC)). In *Richardson*, however, unlike this case, the fee application was uncontested, and as a result, the court had no occasion to test Wilner's claimed hourly rate against controlling law. *Id*. In addition, the order in *Richardson* (which was issued before the amended opinion in *Arbor Hill* was issued on April 10, 2008, *see* 522 F.3d at 182) explicitly considered Wilner's claimed hourly rate against a standard that differs from the "paying client" rule that now controls in this circuit. *Compare id*. (citing *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998)) *with Arbor Hill*, 522 F.3d at 190 (instructing district courts applying the paying client standard to "consider, among others, the *Johnson* factors" and to "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively").[6]

I therefore intend no disrespect for attorneys Brinckerhoff and Wilner – nor indeed any disagreement with the application of pre-*Arbor Hill* law in the decisions on which they rely – in concluding that in light of *Arbor Hill* and the circumstances of this case, the court should base its fee award on hourly rates far lower than the plaintiffs seek. The defendants need not subsidize

---

[6] Of particular relevance to the instant case is the observation in *Arbor Hill* that a paying client "might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case." 522 F.3d at 190. To the extent that the plaintiffs' counsel wished to transform an otherwise unremarkable FDCPA case into a platform for testing out a novel legal theory that Wilner developed in her work defending individuals in collection actions, *see* Wilner Aff. ¶¶ 5-6, it seems likely that a paying client could easily negotiate a retainer agreement that would put the burdens and risks of doing so on the attorney who would reap any reputational rewards that might flow from such a strategic decision.

11

the plaintiffs' decision to engage an attorney who charges significantly more than other attorneys in this district who perform similar work in the same field of practice (or, in the case of Wilner, who *would* charge more for such work if she charged anything at all). The plaintiffs have done nothing to explain why two attorneys performing the kind of work at issue here could command such fees from a paying client. In light of the availability of experienced counsel to handle the kind of litigation at issue here for $200 per hour, I respectfully recommend that the court adopt that rate in calculating the fee for Brinckerhoff in light of his lengthy experience as an attorney (albeit not in this area of law) and the slightly lower rate of $150 for attorney Wilner in light of her relatively lesser experience.

3. Hours Expended

A fee applicant bears the burden of demonstrating the hours expended and the nature of the work performed, preferably through contemporaneous time records that describe with specificity the nature of the work done, the hours expended, and the dates. *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147-48 (2d Cir. 1983). Inadequate documentation is grounds for reduction of a fee award. *Hensley*, 461 U.S. at 433; *Levy v. Powell*, 2005 WL 1719972, at *6 (E.D.N.Y. Jul. 22, 2005). Having reviewed the plaintiffs' submissions in this regard I am satisfied that they sufficiently document the number of hours their attorneys worked on this case. *See* Brinckerhoff Aff. Ex. A (Wilner's time records reflecting 218.7 hours) & Ex. B (Brinckerhoff's time records reflecting 51 hours). However, I conclude that the court should not require the defendants to pay for all of those hours.

A court should exclude from its fee calculation hours that were not "reasonably expended," including "excessive, redundant, or otherwise unnecessary" hours. *Hensley*, 461 U.S.

at 434-35. On that basis, the defendants object to the approximately 50 hours that Wilner spent researching, drafting, and amending the Complaint. Opp. at 9-10. They argue that the Complaint could have been drafted in fewer than three hours, and contest the plaintiffs' characterization of the claims as "novel or complex." *Id*. While the defendants' estimate of three hours is likely unduly strict – although it may accurately reflect the time some attorneys spend producing largely boilerplate pleadings seen in many FDCPA cases in this district – I agree that the claim for 50 hours is excessive. Although the amount of time – over 30 hours – that Wilner attributes to researching and drafting the Complaint seems excessive in its own right, it seems particularly unreasonable to require the defendants to pay for the nearly 20 additional hours that Wilner attributes to revising the Complaint based on discussions with their counsel.[7]

Wilner explains that she amended the Complaint after the defendants "repeatedly impugned the accuracy of Plaintiffs' complaint" and that she "felt the need to examine the Complaint carefully to ensure that it would stand up to this court's close scrutiny." Reply at 5-6. Wilner should have exercised such scrutiny before filling the initial Complaint, not after. Whether the need for such extensive revisions is attributable to inefficiency, inexperience with FDCPA claims,[8] or some other cause is of little import – whatever the reason for the plaintiffs'

---

[7] In *Richardson*, the case in which Wilner's application for a fee of $5,600.00 drew no objection, Wilner managed to research and draft the complaint "from scratch," appear at the initial conference, and negotiate a settlement for the maximum statutory award under the FDCPA for her client (without prejudice to a later application for her fee, as in this case) in only 14.7 hours (or 19.8 hours including the time spent on her fee application). *Richardson*, docket no. 07-CV-3666 (BMC), DE 9 at ¶¶ 7. 10-12, 28-19.

[8] *See Leyse v. Corp. Collection Servs., Inc.*, 545 F. Supp. 2d 334, 338 (S.D.N.Y. 2008) (although the claims were "fairly novel ... a more experienced lawyer may have not found the case as difficult").

13

decision to abandon their initial complaint and draft a new one, the defendants should not have to pay for it. I therefore respectfully recommend that the court cut to 15 (from 49.5) the number of hours Wilner claims for researching, drafting and amending the Complaint.

I further recommend that the court decline to award any fee for 21 of the 26 hours that Wilner spent researching and drafting a motion to compel that she did not file – indeed, Wilner concedes that the defendants should not have to pay for all of her hours spent on such work. *See* Reply at 6. In addition, I recommend that the court reduce by half, from 7.5 hours to 3.75 hours, the compensable hours that Wilner spent simply traveling to depositions. Such a reduction for travel time is a common practice in fee awards, and the plaintiffs offer no good reason to depart from it here. *See, e.g.*, *Sparkman*, 2006 WL 463939, at *3. Accordingly, taking into account all of the reductions discussed above, I respectfully recommend that the court credit Wilner with 159.65 hours of compensable work for the plaintiffs.

I also recommend a significant reduction in Brinckerhoff's hours. Indeed, in light of Wilner's extensive work on the plaintiffs' behalf, it is hard to see why they also required Brinckerhoff's assistance. A court considering a fee application may look to the efficiency with which tasks were delegated to attorneys with "varying degrees of expertise[.]" *King*, 2006 WL 3335115, at *8. In that regard, it is troubling that the plaintiffs do not explain why the defendants should have to pay for Brinckerhoff to attend seven depositions along with Wilner in May 2007. The defendants propose to reduce Brinckerhoff's hours by 21, to a total of 30. Opp. at 14. Although I would endorse an even greater reduction, in light of the defendants' position I respectfully recommend that the court credit Brinckerhoff with 30 hours of compensable work for the plaintiffs.

### 4. Downward Adjustment For Limited Success

Based on the hourly rates and compensable hours recommended above, the presumptively reasonable fee award in this case is $29,947.50. However, I do not recommend that the court award the plaintiffs that amount. Instead, because the plaintiffs achieved such limited success, I recommend a further reduction in the fee award.

In *Arbor Hill*, the court recommended, as "the better course – and the one most consistent with attorney's fees jurisprudence[,]" that a district court "bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." 522 F.3d at 190 (emphasis in original); *see also Barfield v. New York City Health and Hospitals Corp.*, --- F.3d ----, 2008 WL 3255130, at *15 (2d Cir. Aug. 8, 2008). Nevertheless, as Magistrate Judge James Francis has recognized, "some of those variables, ... such as the extent of success, might be considered either in setting the number of compensable hours or in making a further adjustment after a presumptive fee has been established." *Rozell v. Ross Holst*, 2008 WL 2229842, at 4 n.1 (S.D.N.Y. May 29, 2008). I agree. The fact that the plaintiffs eventually abandoned most of their initial claims for relief and settled for a modest recovery may provide insight into the number of hours that they should have devoted to the case as it progressed, or it may even more intuitively warrant a downward adjustment after a presumptively reasonable fee has been calculated, but it is not the kind of information that a paying client would normally have at her disposal in negotiating her counsel's hourly rate at the outset of a case – when such negotiations often take place. I also agree with Judge Francis in another important respect: "In any event, as long as each factor is accounted for, it does not ultimately matter where in the analysis it is applied." *Id*.

Accordingly, I now consider the extent to which the plaintiffs' fee award should be reduced to reflect the very limited nature of their success in this litigation. In doing so, I do not suggest in any way that the failure to secure all relief sought in a complaint, to establish liability on every cause of action, or to prevail on every motion or contested issue is a basis for reducing a presumptively reasonable fee. To the contrary, some setbacks are to be expected on the way to the successful conclusion of almost any lawsuit; "an attorney who loses no battles is not trying hard enough." *Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 216 (E.D.N.Y. 2006) (declining to reduce lodestar fee award based of prevailing plaintiff's failure to establish liability on all causes of action), *aff'd*, 531 F.3d 427 (2d Cir. 2008). But in this case, the plaintiffs secured a victory that is so far short of their original stated goals as to be little better than a nominal win.

Wilner contends that her clients "prevailed on all their federal claims." Wilner Aff. ¶ 14. Even if Wilner's narrow definition of success was viable when written, it no longer accords with the law of this circuit. As the court wrote just weeks ago in *Barfield*,

> A district court's assessment of the "degree of success" achieved in a case is not limited to inquiring whether a plaintiff prevailed on individual claims. *See Kassim v. City of Schenectady*, 415 F.3d [246,] 254 [(2d Cir. 2005)]. Both "the quantity and quality of relief obtained," as compared to what the plaintiff sought to achieve as evidenced in her complaint, are key factors in determining the degree of success achieved. *Carroll v. Blinken*, 105 F.3d 79, 81 (2d Cir.1997). Indeed, this comparison "promotes the court's 'central' responsibility to 'make the assessment of what is a reasonable fee under the circumstances of the case.'" *Farrar v. Hobby*, 506 U.S. [103,] 114-15 [(1992)] (quoting *Blanchard v. Bergeron*, 489 U.S. [87,] 96 [(1989)].

2008 WL 3255130, at *16.

Wilner's carefully worded description of her clients' achievement ignores the basic reality of the result. In accepting the defendants' offer of judgment under Rule 68, they abandoned their

quest for injunctive and declaratory relief, they forfeited the right to recover the actual damages they claimed to have suffered, and they withdrew their claims under New York General Business Law.[9] If all they wanted to recover was their statutory damages, they could and should have so limited their claims; and in that case they might not risk a reduction of an otherwise reasonable fee award upon settling the case for that maximum statutory amount. *See Nelson v. Select Financial Servs., Inc.*, 2006 WL 1372889, at *1-2 (E.D. Pa. June 9, 2006) (awarding $24,000 in attorneys' fees for a $1,000 statutory recovery because it represented a complete success of the litigation). More concretely, if the plaintiffs had limited the scope of their claims and had not sought to vindicate attorney Wilner's legal theory, this litigation would undoubtedly have been far less time-consuming and far less costly – a consideration I have not taken into account in reviewing the number of claimed hours above. The defendants should not have to subsidize the plaintiffs' decision – or that of their counsel – to pursue and then abandon an untested litigation strategy when a simpler and less burdensome one could foreseeably have produced the same result.

---

[9] Moreover, the result that counsel achieved for the plaintiffs here is actually less of a success than that achieved for Wilner's client in *Richardson*. In the latter case, as in this, the plaintiff secured a settlement that included the maximum statutory award but abandoned requests for actual damages, declaratory and injunctive relief, and a judgment under New York state law. *See Richardson*, docket no. 07-CV-3666 (BMC), DE 1 at 7 (Complaint, Prayer For Relief). However, unlike some of the plaintiffs here, some of whom continued to face collection actions in state court notwithstanding their settlement of the federal case, plaintiff Mona Richardson's settlement included the dismissal of the collection action that the federal defendants (her creditor and the creditor's counsel, analogous to the defendants here) had brought against her in state court. *Compare Richardson*, DE 9 ¶ 12 (Wilner's affidavit reporting that her client "also achieved the dismissal of the related case against her in state court") *with* Williamson Aff. ¶ 14 (reporting that Palisades' claims against three of the six plaintiffs in this case "continue to be viable and are still pending in state court").

For that reason, I respectfully recommend a significant reduction of the fee that would otherwise be calculated. In light of the reductions ordered in other cases of partial success, I specifically recommend that the court halve the fee calculated above, and award a total of $14,973.75 in attorneys' fees. *See Barfield*, 2008 WL 3255130, at *16 (affirming as "exactly right" district court's 50-percent reduction of presumptively reasonable fee based on plaintiff's failure to achieve primary goal of certifying a collective action); *Rivera*, 540 F. Supp. 2d at 342-43 (reducing partially successful plaintiff's fee award by 75 percent).[10]

B.  Other Litigation Costs

The plaintiffs seek reimbursement of $9,064.04 in litigation costs other than attorneys' fees. Most of that amount, $8,695.44, represents the amount that a court reporting service has billed the Emery Firm for deposition transcripts; of the rest, $18.60 is for photocopying; and $350.00 represents the filing fee paid to the court. The plaintiffs have adequately described and documented these expenses, and the defendants do not dispute them. *See* Brinckerhoff Aff. Ex. E (deposition invoices); *id*. Ex. B at 5 (photocopying disbursements); DE 1 (filing fee); Opp. at 14. I therefore respectfully recommend that the court award litigation costs (other than attorneys' fees) in the amount of $9,064.04.[11]

---

[10] The amount I recommend is slightly higher – by $723.75 – than the amount that the defendants have proposed as an appropriate award on the basis of somewhat different analysis. *See* Opp. at 12-14 (proposing award of $8,250 for Wilner's work and $6,000 for Brinckerhoff's work). Because I can see no reason to reduce the fee award below the level the defendants deem appropriate, I have not considered a reduction greater than 50 percent of the otherwise presumptively reasonable fee calculated above.

[11] More precisely, although the defendants do not make any argument that the court should decline to award all of the documented costs, they do characterize the court reporter's bill as unreasonable. Opp. at 14 ("While defendants do take issue with the excessive amount billed by the court reporting service, defendants will handle that issue directly with the court reporting

III. Recommendation

For the reasons set forth above, I respectfully recommend that the court enter an order awarding the plaintiffs $14,973.75 in reasonable attorneys' fees and $9,064.04 in other costs, for a total award of $24,037.79.

IV. Objections

Any objections to this Report and Recommendation must be filed with the Clerk no later than September 29, 2008. Failure to file objections within this period waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Beverly v. Walker*, 118 F.3d 900 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52 (2d Cir. 1996).

**SO ORDERED.**

Dated: Brooklyn, New York
September 11, 2008

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge

---

service."). If the Emery Firm has already paid the invoices, the defendants may be unable to recoup any of the charged amount. Nevertheless, there is no reason to require the defendants to pay more for the deposition transcripts than the court reporter will actually accept. Accordingly, with respect to the $8,695.44 in transcript costs, I respectfully recommend that the court allow the defendants to comply with the judgment by satisfying the court reporter's invoices to the Emery Firm, regardless of its costs in doing so.